IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GRETCHEN H. WATSON BAILEY,

        Plaintiff,

v.                                    CIVIL ACTION NO.   6:13-cv-31743

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

      Before the Court is Plaintiff Gretchen Watson Bailey's Complaint [ECF 2] seeking review of the final decision of the Commissioner of Social Security ("Commissioner"). By standing order entered April 8, 2013, and filed in this case on December 11, 2013, this action was referred to United States Magistrate Judge Cheryl A. Eifert for submission of proposed findings and a recommendation for disposition ("PF&R"). On January 5, 2015, Magistrate Judge Eifert entered her PF&R, which recommended that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket. (ECF 14.) On January 19, 2015, Plaintiff filed timely objections to the PF&R. (ECF 15.)

      For the reasons that follow, the Court **OVERRULES** Plaintiff's objections.

*I. BACKGROUND*

      The facts concerning this matter are more fully set forth in the PF&R and need not be repeated here at length. In short, Plaintiff filed an application for supplemental security income

on July 27, 2010 (ECF 10-6 at 9–12), alleging disability as of July 1, 2007, due to obsessive-compulsive disorder, bipolar, and learning problems (ECF 10-7 at 6). The application was denied initially and upon reconsideration. (ECF 10-4 at 3–7, 21–23.)

A hearing was held by video before Administrative Law Judge William R. Paxton on September 24, 2012. (ECF 10-2 at 27–44.) On September 28, 2012, the ALJ issued an unfavorable decision.[1] (*Id.* at 12–22). The Appeals Council denied review of the ALJ's decision on October 15, 2013. (*Id.* at 2–7.) Thereafter, on December 10, 2013, Plaintiff filed her Complaint in this Court. (ECF 2.)

## II. STANDARD OF REVIEW

The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of *de novo* review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

---

[1] The ALJ found at steps one and two of the sequential disability analysis that Plaintiff had not engaged in substantial gainful activity since the date of her application and that she suffered from the following severe impairments: attention deficit hyperactivity disorder, generalized anxiety disorder, panic disorder with agoraphobia, obsessive-compulsive disorder, bipolar disorder, and borderline intellectual functioning. (ECF 10-2 at 14.) The ALJ found at step three that Plaintiff did not have an impairment that met or equaled one of the listed impairments found in 20 C.F.R. § Pt. 404, Subpt. P, App'x. 1. (Id. at 15.) Although finding at step four that Plaintiff has no past relevant work, the ALJ found at step five that there are jobs in the national economy that Plaintiff can perform. (Id. at 21.) Based on these findings, the ALJ denied her application for supplemental security income.

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Assuming error by the Commissioner, "reversal is not required where the alleged error 'clearly had no bearing on the procedure used or the substance of the decision reached'" by the ALJ. *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

*III. DISCUSSION*

A claimant bears the burden of proving to the Commissioner that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5); *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). The Commissioner uses a five-step process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

This case involves Step 3.

At Step 3, a claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition meets or equals the listed impairments found in Appendix 1 to Subpart P of 20 C.F.R. § 404. *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013); C.F.R. §§ 404.1520(d) and 416.920(d).

The sole issue raised in Plaintiff's objections is whether the Magistrate Judge erred in determining that the ALJ's evaluation and finding at Step 3, that Plaintiff's intellectual disability did not meet or equal the listed impairment for intellectual disability (Listing 12.05), was supported by substantial evidence. (ECF 15 at 2.)

---

[2] "Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981).

Listing 12.05 requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22" ("Prong 1"). Listing 12.05 also requires the satisfaction of one of four additional requirements identified as Requirements A–D. At issue in this case is Requirement C, which requires both "[a] valid verbal, performance, or full scale IQ of 60 through 70" ("Prong 2"), and "a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 3"). "For a claimant to show that his impairment matches a listing [set out in Appendix 1 to Subpart P of 20 C.F.R. § 404], it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

> In finding that Plaintiff did not make the required showing, the ALJ explained that
>
> the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 with a significant sub average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (prior to attainment of age 22) and a physical or other mental impairment imposing an additional and significant work-related limitation of function. On October 27, 2010, the claimant presented for a consultative evaluation with William Steinhoff, M.A., and reported that she completed the seventh grade in school and was in special education. Mr. Steinhoff administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) test, which evidenced a verbal comprehension score of 76, a perceptual reasoning score of 67, working memory score of 66, processing speed score of 76, and a full-scale IQ score of 66. Mr. Steinhoff assessed a diagnosis of borderline intellectual functioning noting that she put forth a good effort during testing but had difficulty staying focused. His assessment did not indicate whether the testing was valid, but instead pointed out that there were no prior psychological testing records available. While the record demonstrates that the claimant was tested and received IQ scores falling in the range of 60 to 70, there is no evidence of validity or comparative IQ scores during the developmental period. There are no records demonstrating deficits in adaptive functioning prior to attainment of age 22 (Exhibit 3F). The undersigned finds that the claimant's records fail to satisfy the "paragraph C" criteria.

(ECF 10-2 at 16.)[3]

Plaintiff argues that the ALJ failed to provide a clear and understandable rationale for his Step 3 finding (ECF 15 at 3–4), and that therefore this Court should remand to the ALJ with instructions to conduct additional investigation or to give additional explanations. (ECF 15 at 5.)[4] The Court disagrees. The Court finds that the ALJ supplied a clear and understandable rationale as to why the ALJ found that Plaintiff did not meet her Prong 2 burden of providing a verbal, performance, or full scale IQ of 60 through 70 that is valid.

As Plaintiff has noted in her brief in support of judgment on the pleadings, "the ALJ rejected the validity of the WAIS-IV scores." (ECF 11 at 12.) The ALJ cited several reasons for rejecting the validity of Plaintiff's full scale IQ score in the 60–70 range: (1) the examiner assessed a diagnosis of borderline intellectual functioning; (2) the examiner noted that Plaintiff put forth a good effort during testing but had difficulty staying focused; (3) the examiner did not indicate whether the testing was valid; (4) the examiner instead pointed out that there were no

---

[3] ALJ's discussion of the validity of Plaintiff's IQ scores references the following discussion in the psychological assessment prepared by William Steinhoff, M.A.:

> WAIS-III [sic] VALIDITY: On the WAIS-IV, the claimant obtained a Full Scale IQ score of 66, suggesting intellectual abilities fall within the range of mild mental retardation. She does report a history of special educational services; however, there were no records available concerning the results of any prior psychological testing to indicate if a diagnosis of mild mental retardation was present prior to the age of 18. Based on her interaction throughout the evaluation, as well as reported educational and vocational background, the claimant's intellectual abilities are estimated to fall within the borderline zone. Although she put forth good effort, she was tearful at times and depressed and restless and had difficulty staying focused.

(ECF 10-9 at 46.)

[4] "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

prior psychological testing records available; (5) there is no evidence of validity or comparative IQ scores during the developmental period.

"[A]n ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012). An ALJ may discredit the validity of an IQ score in the record when the examiner fails to affirm the validity of the score and the score is inconsistent with other evidence in the record. *Id.* at 475. *See also Lax v. Astrue*, 489 F.3d 1080, 1086–87 (10th Cir. 2007); *Brooks v. Barnhart*, 167 Fed. App'x 598, 599–600 (9th Cir. 2006); *Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003); *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998); *Muse v. Sullivan*, 925 F.2d 785, 789–90 (5th Cir. 1991) (per curiam); *Popp v. Heckler*, 779 F.2d 1497, 1499–1500 (11th Cir. 1986).

The ALJ's decision points to an important inconsistency which assails the validity of the 60–70 range full scale IQ score: the examiner actually assessed a diagnosis of borderline intellectual functioning, rather than mental retardation. According to the *Diagnostic and Statistical Manual of Mental Disorders* (DSM–IV) published by the American Psychiatric Association, "borderline intellectual functioning" is defined as an IQ in the 71–84 range.[5] Thus, the ALJ has pointed to evidence indicating that the examiner himself did not assess a full scale IQ score in 60–70 range to be an accurate reflection of Plaintiff's actual abilities.[6] The ALJ further points to evidence corroborating the examiner's skepticism about the validity of the

---

[5] AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 684 (4th ed. 1994).

[6] *Cf. Thomas v. Astrue*, Civil Action No. 1:07cv00022, 2008 WL 2169015, at *15 (W.D. Va. May 23, 2008) (finding claimant's borderline intelligence diagnoses, *inter alia*, to be substantial evidence that IQ score in 60 to 70 range was invalid).

score: not only is there evidence that the examiner found that Plaintiff did not put forth her best effort during the examination,[7] but the examiner also failed to affirm that the score was valid,[8] while also pointing out the lack of other evidence in the record that might corroborate the validity of the score. Finally, the ALJ himself points to the lack of any evidence in the record that might corroborate the validity of the IQ score. The ALJ's marshaling of the aforementioned evidence in support of the ALJ's conclusion that Plaintiff failed to produce a valid verbal, performance, or full scale IQ score in the 60 to 70 range, and the sequence in which this evidence is presented, argues implicitly that Plaintiff's full scale IQ score could not be considered valid. This implicit argument is based on the inconsistency between the scores and the examiner's finding of borderline intellectual functioning. It is also based on other indicia of invalidity, such as the examiner's failure to affirm the scores' validity and evidence that the scores may have underestimated claimant's actual level of functioning.

The Court's reading of the ALJ's rationale is similar to that provided by the magistrate judge in the PF&R. Thus, the Court must address Plaintiff's argument in her objections that the magistrate judge "essentially accepted the Commissioner's *post hoc* rationale for support of the ALJ's findings rather than analyzing only the ALJ's own rationale." (ECF 15 at 3.) Under the *Chenery* doctrine, "[c]ourts may not accept appellate counsel's *post hoc* rationalizations for

---

[7] *Cf. Lovelace v. Astrue*, No. 4:11CV00056, 2012 WL 3133524, at *2 (W.D. Va. July 27, 2012) (in rejecting IQ scores ALJ properly relied, *inter alia*, on evidence that plaintiff failed to give best efforts during testing) report and recommendation adopted sub nom. *Lovelace v. Comm'r of Soc. Sec.*, No. 4:11CV00056, 2012 WL 3544652 (W.D. Va. Aug. 16, 2012); *Ramey v. Astrue*, No. 2:10-CV-120, 2011 WL 882836, at *8 (E.D. Tenn. Feb. 22, 2011) (same) report and recommendation adopted, No. 2:10-CV-120, 2011 WL 890995 (E.D. Tenn. Mar. 11, 2011); *Allen v. Barnhart*, No. C 02-4171 SI, 2003 WL 22384782, at *4 (N.D. Cal. Oct. 15, 2003) (same). *Cf. also Smith v. Comm'r of Soc.* Sec., 535 F. App'x 894, 897 (11th Cir. 2013) (claimant's limited effort and apparent fatigue during examination supported finding that IQ scores were not valid and underestimated claimant's actual level of functioning).

[8] *Cf.* 20 C.F.R. § 404, Subpt. P, App. 1, 12.00D(6)(a) ("[T]he narrative report that accompanies [intelligence] test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.").

agency action; . . . an agency's discretionary order [may] be upheld, if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962). *See also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943). It is true that the ALJ did not affirmatively state that the examiner's comments are inconsistent with the scores. Plaintiff argues that "the ALJ's finding/explanation simply narrated part of Mr. Steinhoff's report." (ECF 15 at 3.) To the casual reader, the ALJ's marshaling of facts from the IQ examiner's report might well seem to be a mere recitation of facts in the record, and ideally the ALJ would have made more explicit the inferences which he drew from those facts. However, the ALJ does not write on a blank slate. Reviewing courts may be expected to be familiar with the governing terms and legal principles. This Court can readily discern, from the structure of the ALJ's discussion and from the plain import of the evidence which it references, that the ALJ was implicitly relying on significant evidence of record that tended to undermine the validity of Plaintiff's IQ scores. "While we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

The ALJ's finding that Plaintiff failed to produce a valid verbal, performance, or full scale IQ score in the 60 to 70 range is supported by substantial evidence. In setting forth his reasons for rejecting the validity of Plaintiff's full scale IQ score, the ALJ detailed evidence upon which he relied. That evidence has already been discussed above. The Court notes that additional evidence supported the ALJ's finding that Plaintiff's IQ score was not valid, beyond

9

that which was cited by the ALJ. First, the indications of the examiner's skepticism about the validity of Plaintiff's WAIS-IV scores and the examiner's failure to comment on their validity is in marked contrast with the examiner's discussion of Plaintiff's WRAT-3 scores, which he affirmed "do appear to be a valid measure." (ECF 10-9 at 46.) The use of the word "do" here implies that the examiner intended to suggest that Plaintiff's WAIS-IV IQ scores, by contrast, *do not* appear to be a valid measure. Second, Jeff Boggess, Ph.D., who performed a psychiatric review technique, opined that the IQ scores reported by William Steinhoff, M.A, were "questionable" as Plaintiff "was emotional [*sic*] upset during testing." (ECF 10-10 at 14.)

Accordingly, the Court finds that substantial evidence supports the ALJ's Step 3 conclusion that Plaintiff failed to establish that she met all of the specified medical criteria for "paragraph C" listing 12.05.

*IV. CONCLUSION*

For the reasons stated herein, the Court **OVERRULES** Plaintiff's objections [ECF 15], **ADOPTS** the PF&R [ECF 14] to the extent that it is consistent with this Memorandum Opinion and Order, **AFFIRMS** the final decision of the Commissioner, **DISMISSES** Plaintiff's Complaint [ECF 2], and **DIRECTS** the Clerk to remove this case from the Docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     Monday 30, 2015

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE